MOORE, J.
[ ]The defendant, Cornelius Young, pled guilty to two felony charges and one misdemeanor charge pursuant to a plea agreement. Young agreed to enter guilty pleas on the three charges and testify in an unrelated criminal prosecution in exchange for concurrent sentences, a PSI bond reduction, and no multiple offender bill. However, Young was not called to testify in the criminal trial as initially planned. Subsequently, the court imposed maximum *721 sentences for each offense and ordered that the sentences be served consecutively, to which .the defendant objected. The defendant filed a motion to reconsider sentence requesting the court to impose concurrent sentences under the terms of the plea agreement. The trial court denied the motion because Young did not testify at the trial irrespective of the reason. Young now appeals, urging that the consecutive sentences imposed by the trial court are contrary to the terms of the plea agreement. For the following reasons, we remand to the trial court with instructions for an evidentiary hearing.
FACTS
On September 28, 2013, a Webster Parish deputy investigated a possible break-in at the Antioch Baptist Church. The deputy observed that the door had been forced open. Inside the church building he found the defendant asleep on the floor and snoring. Young was arrested and taken into custody.
The day before, on September 27, 2013, Minden police were called to the local Wal-mart. There, they were met by Brian Ducote, the store manager, who said that earlier he saw the defendant walking near the exit of 12the building with store items. When confronted by Ducote, the defendant claimed that his wife had receipts for the goods, which were valued at $1611.84. Ducote attempted to escort the defendant to the manager’s office to verify that the items were purchased. The defendant then struck Ducote in the face and chest and fled from the store.
On November 14, 2013, Young was charged in three bills of information: (1) one count of middle grade felony theft for the Walmart theft on September 27, 2013, in violation of La. R.S. 14:67(B)(2) punishable by imprisonment with or without hard labor for not more than five years; (2) one count of unauthorized entry of a place of business occurring on September 28, 2013, a violation of La. R.S. 14:62.4 punishable by' imprisonment with or without hard labor for not more than six years; and, (3) simple battery, a violation of La. R.S. 14:36, punishable by imprisonment for not more than six months.
On January 6, 2014, the defendant appeared in court with counsel prepared to accept a plea agreement. The prosecutor recited the initial offer on the record:
Prosecutor: Your Honor, ... the State has offered to let Mr. Young plead guilty to unauthorized place of business with a PSI and we will not multi-bill him'. And in the other matters ... the State’s offered to let Mr. Young plead guilty to middle grade theft and simple battery with a PSI.... And we would, again, not multi-bill him as an habitual offender.
After an off-the:record discussion, the matter was taken up again with a revised offer:
Prosecutor: Discussions with defense counsel, we’ve reached an agreement in this matter and that is that Mr. Young would plead guilty in No. 88,148 to unauthorized place — an ^unauthorized place of business with a PSI and then we’d also agree that in the 88,173, 75 and 7 matters he would plead guilty to middle grade theft and simple battery, again, with a PSI. The special conditions of the plea bargain, Your Honor, are that it’s my understanding in an unrelated case, -and I would rely on my assistant here, Ms. Hay, to keep me out of trouble, but I believe the facts are that he was the roommate of a defendant, who confessed to him while incarcerated, very detailed information concerning a rape that his co-defendant in jail made. Is that basically correct, Mr. Montgomery?
*722 Mr. Montgomery: That’s correct. It — I mean he wouldn’t be a co-defendant.
Prosecutor: I’m sorry. Not co-defendant. Co — co-roommate, roommate.... Roommate while in jail. And so his roommate in jail confessed to him that he in fact did commit a rape and that therefore Mr. Young would be our witness, the State’s witness in the — against Mr. Warmack, in the rape ease.
Mr. Montgomery: That’s correct, Your Honor. He has previously given us— given a statement at the city police department; had about an hour meeting with the DA’s investigator.... He gave a statement under oath.
Prosecutor: What we’re agreeing to is that he would plead guilty in — in the matters as I’ve outlined. We would agree that if he comes back to court and testifies against Mr. Warmack, in the event that matter is not resolved by plea agreement, that he would be required as part of his sentence to do that. But if he does that or Mr. Warmack pleads out, we’ve agreed in light of Mr. Young volunteering to come forward with this information that we believe is truthful and essential in our case, we would agree that all these sentences would run concurrently. We’ve- also agreed that he could have a seventy-five hundred dollar PSI bond. However, he indicates that he lives in Magnolia, Arkansas. And so we would ask some, at least monthly reporting special condition that he’d have to report. And we would put on the record that in the event he doesn’t come back for whatever sentencing date, we would, and we’re going to give him now well down the road, but to — in the event he does not come back, we would agree that these matters would all be consecutive and we would file a multiple offender' bill against Mr. Young if he refuses to come back when called either to testify or for his sentencing.
| ¿The defendant accepted the plea agreement. The court advised Young of his rights under Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969), and determined that Young’s guilty pleas to each offense were free and voluntary. After accepting the guilty pleas, the court set Young’s sentencing date for June 30, 2014, nearly seven months hence, so that Young could testify at the Wannack trial scheduled for March 10, 2014. Also, as part of the plea agreement, the court reduced Young’s PSI bond to $7500.
On June 30, 2014, the defendant appeared for sentencing. The defendant expressed regret for his conduct, explaining that he was stealing to support the drug habit of his girlfriend, whom he was no longer seeing.
The court reviewed Young’s criminal history, which the court described as “very lengthy.” The defendant was born in 1982 and his adult criminal record began in Arkansas where Young pled guilty on one day (in July 2002) to eight felony theft and burglary charges; he received an aggregate 10-year sentence. He pled to guilty to breaking and entering, aggravated assault, second degree battery in Arkansas in 2004 and received a five-year suspended sentence. He pled to possession of Schedule II CDS in Arkansas in 2011 and had another pending felony theft charge in Arkansas from 2013. By the trial judge’s count, the defendant had been convicted of 13 felony offenses including the instant two offenses.
Young did not graduate from high school or obtain a GED. The defendant was in a car accident in 1998 where his cousin was killed; the accident caused the defendant to suffer from PTSD. The defendant had a | ¿sporadic work history, was unmarried and has no children.
*723 After this PSI review, the court then stated:
I will state that at the time you pled guilty the agreement was there would be no multiple offender bill and that if you were — if you testified in the case of State versus Leland Warmack the State was recommending that your sentences would run concurrently with each other. However, you — that case was tried two weeks ago.... And you were not — you did not testify. Now whether you were called or refused to testify or you were available and they chose not to call you, I don’t know, I wasn’t privy to that conversation, but all I do know is you did not testify.
The court then sentenced Young to six years at hard labor for the unauthorized entry and five years at hard labor for the middle-grade theft, both maximum sentences, and ordered that the sentences be served consecutively. The court also sentenced Young to six months in the Webster Parish jail for the simple battery conviction, with credit for time already served. The defendant objected to the sentence.
The defendant timely filed a motion to reconsider sentence in which he argued that his sentences were not in compliance with the plea bargain and were excessive.
On October 3, 2014, the court held a hearing on the defendant’s motion to reconsider sentence. Defendant’s attorney argued that Young gave the district attorney’s office useful information regarding the prosecution of Leland Warmack, and although he was prepared to testify, the state decided not to use him at trial. Since it was the state’s decision not to call Young to testify, the sentences should run concurrently according to the plea agreement.
|fiThe prosecutor[1] responded to this argument, stating:
[0]ur response is that it is a fact that we early on in the, in the investigation of the Leland Warmack trial, this person, Mr. Young, Cornelius Young, did offer to provide for us information, that if accepted by a jury as being true, would have been helpful in the prosecution of that Warmack case. However, while the Warmack case was being prepared for trial, Mr. Young wrote letters to and made comments to the district attorney’s office that in our opinion cast doubt upon his reliability as a witness. And for that reason, we chose not to call him. The documents, he had letters and then we had contacts in various ways to the extent that he on one or two occasions was not going to testify or he was not going to be helpful. And just based on that very vague and the situation had become very, very nebulous, we just decided that he was not reliable and that we would not call him in that very important case that we prosecuted and convicted Mr. Leland Warmack.
The defendant was placed under oath and made a statement:
The reason, Your Honor, that I wrote letters to them, because I pled guilty to .my charges due to being bonded, because the district attorney’s office didn’t want to give me probation. So they said if [sic] plead guilty to the charges and testify truthfully in the case, he’ll give me a bond reduction where I can bond out for my family in case in June the 30th I get hard labor. Well, discovered from the jail to — from Webster Parish *724 to the Chief of Police in Springhill that they was holding me in jail until after the trial. Said I couldn’t bond till after the trial. So that’s why I wrote letters to the district attorney’s office asking about it. And they called me down there and, Ms. Angela Hall and them, they apologized for their actions. And they thought due to that I was going to retaliate by not being helpful in the case. So they — she told me that’s why they didn’t call me. But they brought me out here. I was here and I was willing to take the stand. And they brought me out here but the district attorney’s office turned me around on June the 18th.
Responding to Young’s explanation, the court said that with 13 prior felony convictions, he would not give a probated sentence. Regarding [7Young’s request for concurrent sentences instead of consecutive sentences, the court stated:
When you pled guilty it was the Court’s understanding that if you were called as a witness and that you testified truthfully that the sentences that you were sentenced on would run concurrently with each other. I stated at the time I sentenced you or frankly I don’t recall whether I stated it or not, but when I sentenced you, I presided over the trial of Leland Warmack and I knew from sitting through that trial that you never testified as a witness in that case. Now whether that was because you refused to or the State chose not to call you or whatever. The record will speak for itself as far as what each side said here today. But you did — no, sir, I’ve already given you a chance to talk and I don’t want to hear anything more. But you did not testify. I think your record is such that the sentence I imposed were — was appropriate and I chose to run them consecutively. So the request to reconsider the sentence is denied and I’ll note your objection to the Court’s ruling.
The appellate record also contains four handwritten letters presumably written by Young to Holli Vining, the Webster Parish Clerk of Court, while he was in jail awaiting sentencing. These letters were not formally introduced into evidence at this hearing. Furthermore, because these letters were to the clerk and not to the district attorney, it is unclear whether the letters are the ones referred to by the prosecutor at the hearing on the motion to reconsider. The first two letters were sent in November and December of 2013 prior to the guilty plea agreement. Young relates a story about some of his fellow inmates at the jail and his fears for his safety owing to the possession of a razor by one of the inmates. In the second letter, Young writes that he has “very important information [that he had] been trying to get to the DA’s office and my lawyer involving the Leland Warmack case,” but had been unable to do so. In this letter, he expressed fear of the jail staff. The copy of the third letter from March 2014, is | «illegible due to a poor copy. The fourth letter, from April 2014, is a i*equest for help in clarifying with various authorities the charges against him and the bond amount so that he can make bail.
The court denied Young’s motion to reconsider sentence. Young filed this appeal alleging that the court erred in ordering that the sentences be served consecutively, contrary to the plea agreement.
DISCUSSION
The sole issue on appeal is whether the trial court erred when it failed to order that Young’s sentences be served concurrently under the terms of the plea agreement.
*725 In determining the validity of plea agreements, Louisiana courts generally refer to rules of contract law, while recognizing at the same time that a criminal defendant’s constitutional right to fairness may be broader than his or her rights under contract law. State v. Givens, 1999-3518 (La.1/17/01), 776 So.2d 443. The party demanding performance of a contract has the burden of proving its existence. State v. Louis, 94-0761, p. 7 (La.11/30/94), 645 So.2d 1144 at 1149. In the context of plea bargains, a defendant may demand specific performance of the state’s promise if he can show that the parties reached an agreement, that he performed his part of the agreement, and that in doing so, he relinquished a fundamental right. Id. at 1149-50; see also, State v. Tanner, 425 So.2d 760, 763 (La.1983).
Contracts have the effect of law for the parties and must be performed in good faith. La. C.C. art. 1983. A party has an implied obligation to make a good faith effort to fulfill the conditions of a contract. Bloom’s Inc. v. Performance Fuels, L.L.C., 44,259 (La.App. 2 Cir. 7/1/09), 16 So.3d 476, writ denied, 2009-2003 (La.11/20/09), 25 So.3d 800. When there are reciprocal obligations, the obligor of one may not be put in default unless the obligor of the other has performed or is ready to perform ,his own obligation. La. C.C. art. 1993. Also, a party to a commutative contract may refuse to perform his obligation if the other has failed to perform. La. C.C. art. 2022.
Young alleges that he is entitled to specific performance of his plea agreement because he was ready and willing to fulfill his part of the agreement by testifying against his former cellmate, Leland War-mack. The state’s unilateral decision not to call him as a witness, he contends, should not prejudice his rights under the bargain.
At the hearing on the motion to reconsider, the prosecutor stated that Young was not called as a witness because he had written letters to the district attorney’s office and “made comments that in our opinion cast doubt upon his reliability as a witness.” He further stated that they had “contacts” that indicated Young might not testify, but that the situation was very “nebulous.” The unauthenticated copies of two letters written by Young after he entered the guilty plea that are in the appellate record do not indicate that Young refused to testify.
Young admitted to writing the letters. He indicated at the hearing that he was upset because authorities would not allow him to bond out of jail in order to be with his family while awaiting sentencing. He said that the Webster Parish Chief of Police said he was being held until after he testified 110at the Warmack trial. Regarding the bond, the guilty plea transcript indicates that the court reduced the bond to $7500 so that Young could bond out for that purpose. The prosecutor noted that Young lived in Arkansas, and he asked the court to require Young to report monthly until the trial and sentencing.
On appeal the state argues that the defendant could not testify as a truthful witness in the Leland Warmack trial because his credibility became questionable after he entered his guilty plea. • The state’s acceptance of-the guilty plea was premised on Young’s ability to testify truthfully as a credible witness. When Young’s credibility as a witness became suspect, his ability to testify truthfully in the Warmack trial was compromised and he breached the plea agreement.
Public records indicate that Leland War-mack was convicted as charged of aggravated incest and molestation of a juvenile, and he appealed his sentence. The appel *726 late court opinion noted that Warmack’s conviction was based, in part, on testimony of “two inmates housed with Warmack [who] testified that he had admitted to them that he had sexually abused the child and that he planned on punishing her for telling police about the abuse.” State v. Warmack, 49,880 (La.App. 2 Cir. 5/20/15), 166 So.3d 424.
In our view, the plea agreement clearly stated that, in view of Young coming forward with information regarding Warmack and his agreement to testify at Warmack’s trial, his sentences would run concurrently if Warmack pled out, or if Young testified at his trial. If he refused to testify or did not | nappear, his sentences would run consecutively. The prosecutor stated:
We would agree that if he comes back to court and testifies against Mr. War-mack, in the event that matter is not resolved by plea agreement, that he would be required as part of his sentence to do that. But if he does that or Mr. Warmack pleads out, we’ve agreed in light of Mr. Young volunteering to come forward with this information that we believe is truthful and essential in our case, we would agree that all these sentences would run concurrently.... And we would put on the record that in the event he doesn’t come back for whatever sentencing date, we would, and we’re going to give him now well down the road, but to — in the event he does not come back, we would agree that these matters would all be consecutive and we would file a multiple offender bill against Mr. Young if he refuses to come back when called either to testify or for his sentencing.
The trial court did not believe that it was constrained to impose consecutive sentences because, irrespective of the reason, Young did not testify. The court stated:
I stated at the time I sentenced you or frankly I don’t recall whether I stated it or not, but when I sentenced you, I presided over the trial of Leland War-mack and I knew from sitting through that trial that you never testified as a witness in that case. Now whether that was because you refused to or the State chose not to call you or whatever. The record mil speak for itself as far as what each side said here today. But you did — no, sir, I’ve already given you a chance to talk and I don’t want to hear anything more. But you did not testify. I think your record is such that the sentence I imposed were — was appropriate and I chose to run them consecutively. So the request to reconsider the sentence is denied and I’ll note your objection to the Court’s ruling. (Emphasis supplied.) .
After review, we are unable to ascertain on this record whether the state’s decision not to call on Young to testify in the Warmack trial was justified. The record indicates that Young met with the district attorney and disclosed useful information, including a confession, regarding the Leland Warmack prosecution. The state believed that Young was competent and |12would make a reliable witness. It now argues that Young became unreliable and therefore could not testify truthfully. There is no evidence that prosecutors met with Young and made this determination. The letters in the record on appeal do not support the prosecutor’s nebulous explanation that certain statements by Young “cast doubt upon his reliability as a witness,” nor was there any evidence submitted at the hearing supporting the prosecutor’s statement that Young was no longer a reliable witness. It also appears that Young wrote the letters because he reasonably believed that he was being prevented from bonding out of jail until he testified at the Warmack trial, which ap *727 pears contrary to the intent of reducing his bond according to the plea agreement. Additionally, the state apparently had two other inmate witnesses who were available to testify at trial regarding the same matters that Young reported. Thus, while at the time the plea agreement was entered into, the state believed that Young’s information was “truthful and essential,” Young’s later conduct regarding bonding out made the state believe that Young’s testimony was not necessary in the prosecution of Warmack.
In State v. Dixon, 449 So.2d 463 (La.1984), the defendant pled guilty to a reduced charge of two counts of simple burglary. The trial court imposed the maximum 12-year sentence for each count, and ordered the sentences to be served consecutively. The defendant immediately objected to the sentence, and he told the court that he entered the guilty plea only because he was promised that his sentences would be less than 12 years, and they would be served concurrently. He immediately appealed the sentence. [ ^Before his sentence became executory, the trial court amended the sentence so that the two 12-year sentences would run concurrently. The defendant maintained his appeal regarding the length of sentences.
On appeal, the court noted that the record was devoid of comments, explanation, or argument by the state and the defense attorney regarding the allegation of un-kept promises, giving credence to the defendant’s position. Because of the insufficient record, the court remanded the case for an evidentiary hearing. It stated:
If the evidence adduced at that hearing supports a finding that Dixon’s guilty plea was induced in part by the state’s promise of concurrent sentences of less than 12 years, the plea bargain must be enforced or Dixon allowed to withdraw his guilty plea.
In the instant case, there is no question that, in order to receive concurrent sentences, Young agreed to testify against Leland Warmack if that case went to trial. The prosecutor noted that if Warmack pled out, then Young would not be required to testify, but would still receive concurrent sentences “in light of Mr. Young volunteering to come forward with this information that we believe is truthful and essential in our case.” The agreement did not contemplate Young not testifying for other reasons, including the reason that the state no longer needed his testimony because it had other, perhaps more reliable witnesses. Yet it remains certain that Young did provide information that the state believed was essential to its case at the time it entered the plea agreement.
We conclude that the question of whether Young held up his end of the bargain should be resolved based upon evidence and not solely upon the [ uprosecutor’s argument that Young’s erratic behavior amounted to a failure to perform. Because the record is currently devoid of any evidence that Young refused to testify at Warmack’s trial, or that the state had good grounds to believe that Young would not testify, we remand this case for an eviden-tiary hearing on this sole issue. The trial court should inquire further into the evidence of Young’s conduct before deciding that Young was not entitled to the deal he made when he pled guilty, especially since Young’s only “bargaining chip” was his personal knowledge of Warmack’s admissions and that knowledge is no longer valuable to the state because Warmack has now been convicted. If the evidence adduced at the hearing supports a finding that Young was willing to testify as promised and the state simply elected not to use Young at trial, then the plea bargain must *728 be enforced and concurrent sentences ordered, or, Young must be allowed to withdraw his guilty pleas.
DECREE
For the reasons assigned, we remand this case to the district court with instructions to hold an evidentiary hearing to determine whether the defendant breached the plea agreement regarding concurrent sentences by refusing to testify at the trial of Leland Warmack. If the evidence is -not sufficient to show that the defendant was unwilling to fulfill his obligation- under the plea agreement, the plea agreement must be enforced, or Young must be allowed to withdraw his guilty pleas.
REMANDED WITH INSTRUCTIONS.
BROWN, C.J., dissents with written reasons.

. Two different Assistant District Attorneys handled this matter. C. Sherburne Sentell, III represented the state at the guilty plea on January 6, 2014 and at sentencing on June 30, 2014. However, John W. Montgomery appeared on behalf on the state at the October 3, 2014 hearing on the motion to reconsider.