COX, J.
This criminal appeal arises from the Third Judicial District Court, Lincoln Parish. The defendant, Steven Hardyway, was found guilty as charged of attempted first degree murder and armed robbery. For the conviction of attempted first degree murder, Hardyway was sentenced to 50 years' imprisonment at hard labor, without the benefit of probation, parole, or suspension of sentence. For the conviction of armed robbery, Hardyway was adjudicated a second-felony habitual offender and sentenced under La. R.S. 15:529.1 to 99 *506 years' imprisonment at hard labor, without the benefit of probation, parole, or suspension of sentence. The sentences were imposed to run concurrently. Hardyway now seeks review of his convictions and sentences. For the following reasons, we vacate Hardyway's conviction and sentence for attempted first degree murder. We affirm Hardyway's conviction of armed robbery and vacate his habitual offender adjudication and sentence for armed robbery and remand for further proceedings.
FACTS
On December 30, 2015, Hardyway was charged with the attempted first degree murder of Myisha Jefferson, in violation of La. R.S. 14:30 and La. R.S. 14:27, and the armed robbery of Ms. Jefferson, in violation of La. R.S. 14:64.
On February 16, 2017, the defense filed a motion to quash the bill of information on grounds that the charges violated Hardyway's protection against double jeopardy. Hardyway argued that he could not be prosecuted for attempted first degree murder that allegedly occurred during the commission of an armed robbery, while also being prosecuted under a second charge for the same armed robbery offense. The State argued in response that there was no violation of double jeopardy because attempted first degree murder had an additional required element - specific intent to kill or inflict great bodily harm. The State also argued that attempted first degree murder does not require the commission or attempted commission of armed robbery as the only underlying basis for the charge and is not restricted to armed robbery as the only enumerated felony. The State further argued that the facts of this case suggested that Hardyway's actions constituted more than one of the felonies enumerated in La. R.S. 14:30, and since the bill of information did not specify a particular enumerated felony, there was no reason for the court to grant the motion to quash at that time. The trial court denied the motion to quash, but reserved the right to file a per curiam in due course if appropriate. The defense did not seek supervisory review of the ruling.
The evidentiary portion of the trial began on August 8, 2017, with testimony from Ms. Jefferson. She stated that she began working as a shift supervisor at the Subway restaurant on West California Avenue in Ruston, Louisiana, in late July or early August of 2015. She testified that over the next few months, she occasionally shared a shift with a coworker named Steven Hardyway. One rainy day, she gave Hardyway a ride to his girlfriend's house. She stated that Hardyway's employment was terminated in late October of 2015.
Ms. Jefferson testified that on November 4, 2015, she worked the closing shift, from 4:00 p.m. to 10:00 p.m. Once the store was closed, she and two other female employees cleaned up, and the other two employees left. She testified that she closed out the register, set the security alarm, and proceeded to leave. As she was leaving, two African-American males wearing masks entered through the back door. Ms. Jefferson recalled that one of the masks was a devil-style mask with horns, but could not remember the second mask.[1] The men demanded that she turn off the alarm and give them the money in the safe. Ms. Jefferson stated that she immediately recognized one of the men's voices and his Converse sneakers and camouflage shorts, as belonging to her former co-worker, *507 Hardyway. Ms. Jefferson could not clearly remember which intruder wore which mask. She did not recall any identifiable information about the other man, whose voice she did not recognize
Ms. Jefferson stated that both men struck her and repeatedly threatened to shoot her while demanding that she open the safe. Ms. Jefferson testified that the safe could only be opened by keying a code into a digital keypad. She stated that when the men demanded she open the safe, she broke the digital keypad off the safe, thinking it would cause the safe to open, but it did not.
Ms. Jefferson testified that she told the two men that the safe could not be opened because the digital keypad was broken. The men continued to hit her and threatened to shoot her if she did not open the safe. Ms. Jefferson stated that she told the two men that she had a tire tool in her vehicle that might be used to pry open the safe, but she was unable to open the safe with the tool.
Ms. Jefferson stated that the man she recognized as Hardyway called her "Myisha," and asked if she knew who he was. In hopes of protecting herself, Jefferson told him that she did not know him. She testified that the same man ordered her to lie down on the floor in the drive-through window area. Ms. Jefferson stated that while she was lying down, Hardyway took her wallet, which contained her money, personal bank card, and work credit card.
Ms. Jefferon stated that Hardyway took the money and card from her wallet, then shot at her. Ms. Jefferson attempted to run to the front door of the restaurant. She testified that as she attempted to unlock the front door, Hardyway hit her in the head with a gun and stabbed her multiple times. She stated both men left after the attack. Ms. Jefferson testified that after the attack, she went outside through the front door, but was unable to find help, so she returned to the drive-through area, where she called 9-1-1 and collapsed on the floor. She stated that she lost consciousness a couple of times while she was trying to get help.
At trial, Ms. Jefferson recalled that earlier in the day on November 4, 2015, Hardyway's girlfriend asked her if she was closing that night. Ms. Jefferson confirmed that she was closing.
Ms. Jefferson identified State's Exhibit S-2 as the same camouflage shorts worn by the man she recognized as Steven Hardyway on the night of the attack. She also identified State's Exhibits S-3 and S-4 as the same faded black Converse shoes that she recalled Hardyway wearing at work and when he attacked her. Ms. Jefferson identified Hardyway in court as her former co-worker and the man whose voice she recognized when he entered the Subway, stole money, and attacked her.
The factual basis of Ms. Jefferson's testimony about this event was corroborated by the Subway security surveillance video. The video played for the jury showed two masked men armed with guns entering through the back of the store. The video shows that the armed men hit Ms. Jefferson and threatened her life if she did not turn off the alarm and open the safe. The video shows, from multiple angles, the man in the alien mask taking bills that Ms. Jefferson was able to retrieve from the safe's top slot as she laid them on the floor. The video also shows that the armed intruders searched Ms. Jefferson's person and removed her wallet with her money and bank card. The video shows the man in the alien mask taking the coin register off the counter. The video, along with the audio, shows that the man in the alien mask continued a dialogue of threats *508 against the victim as he hit her and watched her struggle to open the safe with the tire tool. The video shows the alien-masked man fired a gun at Jefferson six times, and then returned and chased after her as she attempted to escape. Another gunshot is heard and then the sound of Jefferson screaming before the man runs off. The video shows Jefferson collapsing to the floor in the drive through window area and calling 9-1-1.
Linda Echols, Director of Health Information Management for Northern Louisiana Medical Center in Ruston, Louisiana, testified about Ms. Jefferson's medical records after the attack. She stated that in addition to being shot with a small caliber gun, Ms. Jefferson's medical records revealed the following:
[M]ultiple stab wounds to the chest, approximately 35 to 40 total. She had bilateral pheumothoraces. She also had very deep extensive laceration to the right side of her neck. She had injuries to the left axilla as well as extensive injury to the left wrist.
...
The patient was resuscitated and emergently taken to the operating room... She had bilateral ear lacerations which were actually near amputations. She underwent closure of multiple stab wounds. She underwent exploration of the left wrist bleeding site with ligation of the radial artery from the dorsal aspect. She had complex repair of right neck laceration and chest tube placement.
Captain Eric Hanna, of the Ruston Police Department, testified that due to Ms. Jefferson's condition, she was restricted in her communications with the investigating officers immediately after the attack. He stated that through a series of questions, officers were able to discern from Ms. Jefferson's responses that one of her attackers was Hardyway, a former coworker.
Victoria Robbins, the manager of Subway on November 4, 2015, testified that while reviewing the surveillance video, she recognized the clothing and voice of one of the armed intruders as belonging to her former employee, Hardyway. Robbins testified that Hardyway worked at that Subway from late July or early August 2015 until October 2015, for approximately 20 hours per week. Robbins stated that Hardyway had worn the Converse sneakers and the camouflage shorts to work, and she was familiar with his voice because she worked with Hardyway about 10 hours each work week. She also testified that the person she recognized as Hardyway knew things that only employees or former employees would know, such as the location of the keys to the cash registers. Robbins testified that when checking the store after the robbery, she found the store was short some money.
Lieutenant Henry Wood, of the Ruston Police Department, testified that after Hardyway was identified as one of the armed intruders by both Ms. Robbins and Ms. Jefferson, the officers searched for Hardyway at known residences, including the home of Virgina Castle, Hardyway's grandmother. Detective J.D. Driskall, of the Lincoln Parish Sheriff's Department, and Lt. Wood searched Ms. Castle's home. Det. Driskall and Lt. Wood testified that in the rear bedroom closet, officers found the camouflage shorts that Hardyway was seen wearing in the security video.
Ms. Castle testified that Hardyway came to her Grambling, Louisiana, home on the morning of November 5, 2015, changed clothes in the rear bedroom, and left again. Ms. Castle identified exhibit S-2 as the shorts Hardyway wore into her home before changing.
*509 Shequita Jones, Hardyway's mother, testified that she spoke with Hardyway the morning of November 5, 2015, and told him that law enforcement officers were looking for him in connection with the Subway robbery. Ms. Jones stated that she wanted her son to turn himself in to law enforcement. She testified that she called the police to notify them that Hardyway was at his aunt's house. When the police arrived at the aunt's house, Hardyway was no longer there. Det. Driskall testified that Hardyway was arrested on November 6, 2015, while meeting his mother on the side of the road, outside of a wooded area.
Lt. Wood testified that Hardyway told officers he had a "bunch of" dollar bills in his pocket, admitted to being in the area of the Subway that night, and admitted to changing his clothes and leaving his shorts and shoes at his grandmother's house. Lt. Wood testified that DNA testing of the shorts and shoes, against DNA profiles obtained from Steven Hardyway, Jeremy Hardyway, and Myisha Jefferson, revealed that Ms. Jefferson's DNA and Hardyway's DNA were both found on the camouflage shorts and one of the Converse shoes that Hardyway was seen wearing during the Subway incident.
Officers Trey Tull and Gerald Jenkins, of the Ruston Police Department, both testified that a trail of coins was found running through the Subway restaurant and out the back door, then through the parking lot, where the asphalt ended at a yard. Officer Tull testified that a canine tracked the path left by the suspects through the vegetation.
Lieutenant Marchale Canty, also of the Ruston Police Department, testified that he took photographs and collected evidence at the crime scene. Lt. Canty testified that neither fingerprints nor DNA evidence were recovered at Subway. Lt. Canty stated that the Subway coin dispenser was found abandoned in a nearby yard, but the dispenser had no fingerprints on it. He testified that a red devil mask, matching the one seen in the surveillance video, was found floating in a nearby creek, about one block from Subway. Lt. Canty stated that the investigation revealed that Hardyway's cousin, Jeremy Hardyway, was the other armed intruder, and that he was the perpetrator who wore the devil mask, while the defendant, Hardyway, wore the alien mask.
Jeremy, Hardyway's cousin, testified that the two of them committed the criminal offenses at Subway on November 4, 2015. Jeremy acknowledged that he pled guilty to armed robbery, and in exchange for the State's agreement for a five-year sentence, he agreed to testify about the crime. In court, Jeremy identified his cousin, Hardyway, and admitted that the two of them planned to rob the Subway. He stated that they each had a gun, but only Hardyway wore gloves, and he covered his hands with his shirt sleeves. Jeremy confirmed that he wore the red devil mask while Hardyway wore the alien mask. Jeremy confirmed that Hardyway was wearing camouflage shorts and Converse sneakers. Jeremy admitted that he and Steven entered through the back door, grabbed Ms. Jefferson, and demanded that she shut off the alarm and open the safe. He also testified that both men hit Ms. Jefferson and threatened her for 20-30 minutes while demanding that she open the safe. Jeremy testified that Hardyway shot and stabbed Ms. Jefferson.
Jeremy testified that Ms. Jefferson was able to pull bills through a slot on the safe. She placed the bills on the floor, and Hardyway took the money. Jeremy confirmed that Hardyway told Ms. Jefferson to lie down in the drive-through window area, and stood over her, then shot at Ms. Jefferson multiple times. Jeremy testified *510 that when Hardyway asked for his gun, Ms. Jefferson attempted to run to the outside door, and Hardyway caught her and stabbed her repeatedly with his knife. Jeremy stated that he tossed his red devil mask on the trail they followed after leaving Subway. He also confirmed that Hardyway took the coin dispenser, which they dumped on the ground.
After the State rested, the defense called Audra Williams, of the North Louisiana Crime Lab, to testify. Ms. Williams was accepted as an expert in forensic DNA analysis. Ms. Williams testified about the details and results of the DNA testing that she conducted on the evidence recovered.
Levincesky Pfeiffer testified that he and Jeremy were incarcerated together, in rooms next to each other. He stated that Jeremy told him that he committed the armed robbery at Subway with a man named "Yedi or Yadi."[2] He stated that Jeremy never mentioned the name Steven Hardyway. The defense rested.
During the trial, the defense made an oral motion for mistrial, re-urging the double jeopardy challenge raised in the previously denied motion to quash. The trial court denied the motion. The defense did not seek supervisory review of that ruling.
The jury found Hardyway guilty as charged on both counts. Jury polling established that the vote on both counts was unanimous.
On August 15, 2017, the State filed a habitual offender bill, charging Hardyway as a third-felony habitual offender as to the armed robbery conviction only. On August 17, 2017, the defense filed a motion to quash the habitual offender bill of information. Hardyway also moved for a post-verdict judgment of acquittal and a new trial. Both motions were denied on September 9, 2017. The State then arraigned Hardyway on the habitual offender bill, charging Hardyway as a third-felony habitual offender as to the armed robbery conviction. The defense entered a plea of not guilty and denial.
Hardyway appeared for sentencing on October 3, 2017. The trial court stated that the presentence investigation report had been completed and reviewed. The trial court observed the following aggravating factors: Hardyway held the victim at gunpoint for 30 minutes, threatened her life, hit her and shot at her at close range six times, then shot her again with another gun, and stabbed her multiple times in the back and neck. The victim required a ventilator and approximately $ 100,000 in medical treatment, and lives with physical and emotional scars from the trauma. Hardyway took property, things of value, that did not belong to him, but that belonged to Subway and to Ms. Jefferson. The trial court noted a prior felony conviction for simple burglary. The trial court found that Hardyway was in need of correctional treatment in a custodial environment by commitment to an institution. It observed that Hardyway's conduct manifested deliberate cruelty to Ms. Jefferson and that he used threats of violence and actual violence, along with a dangerous weapon in committing the offenses. The trial court observed that Hardyway endangered human life by discharging a firearm in the commission of the offense. It also noted that Hardyway's actions resulted in permanent and significant injury to the victim.
The trial court did not find any mitigating circumstances. For the conviction of attempted first degree murder, Hardyway was sentenced to 50 years' imprisonment *511 at hard labor, without the benefit of probation, parole, or suspension of sentence. For the conviction of armed robbery, Hardyway was sentenced to 60 years' imprisonment at hard labor, without the benefit of probation, parole, or suspension of sentence. The sentences were imposed to run concurrently with one another, with credit for time served. The trial court advised Hardyway of the time delays to seek post-conviction relief.
On October 3, 2017, the trial court also heard the motion to quash the habitual offender bill. The motion was denied. The habitual offender bill stated that Hardyway had been charged in Criminal Docket No. 64,447 with simple burglary of the Grambling Postal Facility. He was also charged in the same docket number with simple criminal damage to property over $ 500.00, regarding the post office loading dock, multiple packages, and personal mail. The felonies occurred on the same day, in one transaction. Hardyway pled guilty to both on August 15, 2013, and was sentenced on October 3, 2013. The defense argued that because the two offenses were committed on the same day, the conviction could only count as one predicate offense for habitual offender purposes, meaning Hardyway could only be adjudicated a second-felony habitual offender. The matter was taken under advisement.
On November 30, 2017, the trial court filed a written ruling, finding that the two prior convictions arose from a single course of action and therefore, only counted as one predicate conviction under the habitual offender law. The trial court found that Hardyway was a second-felony habitual offender.
Hardyway appeared before the court on December 5, 2017, for sentencing on the armed robbery conviction under the habitual offender law. The trial court adopted its written ruling adjudicating Hardyway as a second-felony habitual offender as to his armed robbery conviction. The trial court vacated the prior sentence for armed robbery. The defense argued that Hardyway had no prior violent criminal convictions, and requested that the court consider imposing a sentence that deviated below the statutory minimum. The State pointed out that Hardyway shot at his victim seven times and stabbed her over 35 times.
The trial court then recited the second-felony habitual offender law in effect at the time of sentencing, which imposed a sentencing range of 33 years to 198 years of imprisonment, as opposed to the range at the time Hardyway committed the offense, which was 49½ years to 198 years. The trial court adopted its prior reasons for sentencing on the armed robbery charge, again noting the factual basis for the jury's guilty verdict. The trial court resentenced Hardyway for his armed robbery conviction under the habitual offender law to 99 years' imprisonment at hard labor, without the benefit of probation, parole, or suspension of sentence. The sentence was imposed to run concurrently with Hardyway's attempted murder sentence. The trial court again advised Hardyway of the time delay to seek post-conviction relief. Hardyway objected to the sentencing.
Hardyway moved to appeal his conviction and sentence on December 11, 2017. On December 14, 2017, Hardyway filed a motion to reconsider sentence and argued that the habitual offender sentence was disproportionate, excessive, and in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. The motion was denied on January 3, 2018.
DISCUSSION
Double Jeopardy
Citing State v. Williams , 26,230 (La. App. 2 Cir. 9/21/94), 643 So.2d 284, *512 writ denied , 96-0115 (La. 3/29/96), 670 So.2d 1236, Hardyway argues that the conviction for armed robbery and attempted first degree murder, based on the same armed robbery, violate the prohibition against double jeopardy.[3] In its brief, the State does not argue against double jeopardy, only arguing that if the Court finds double jeopardy, the attempted first degree murder charge should be vacated.
Both the United States and Louisiana Constitutions provide that no person shall be twice put in jeopardy of life or liberty for the same offense. U.S. Const. Amend. V ; La. Const. art. 1, § 15 ; La. C. Cr. P. art. 591. Double jeopardy provisions protect an accused not only from a second prosecution on the same offense, but also from multiple punishments for the same criminal conduct. State v. Vaughn , 431 So.2d 763 (La. 1983).
In Blockburger v. United States , 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the U.S. Supreme Court set out a precise rule of law to determine if a double jeopardy violation has transpired. "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, supra . Louisiana's separate "same evidence" test is no longer used in determining whether a double jeopardy violation exists. State v. Frank , 16-1160 (La. 10/18/17), 234 So.3d 27.
La. R.S. 14:30 provides, in pertinent part, that first degree murder is the killing of a human being:
When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, second degree kidnapping, aggravated escape, aggravated arson, aggravated or first degree rape, forcible or second degree rape, aggravated burglary, armed robbery, assault by drive-by shooting, first degree robbery, second degree robbery, simple robbery, terrorism, cruelty to juveniles, or second degree cruelty to juveniles.
La. R.S. 14:27 defines an attempted offense as occurring when any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object.
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64.
Hardyway was charged with the armed robbery of Myisha Jefferson and attempted first degree murder of Myisha Jefferson. The jury convicted him of both attempted first degree murder and armed robbery. The jury instructions defined first degree murder as, "the killing of a human being when the offender acted with specific intent to kill and in addition the offender was engaged in the commission or attempted commission of armed robbery, first degree robbery, or simple robbery." The jury instructions did not list the other enumerated felonies under the first degree murder statute. Therefore, the State was limited to proving attempted first degree murder with only the robbery charge.
In this case, armed robbery against Ms. Jefferson was the only enumerated felony charged by the State. Based on the jury instructions and charges against Hardyway, *513 armed robbery was a required element for proving attempted first degree murder. Had the State proved, and the jury found, attempted first degree murder based on another underlying felony, it is possible that double jeopardy might not exist. See State v. Thomas , 50,929 (La. App. 2 Cir. 8/10/16), 201 So.3d 263, writ denied , 2016-1642 (La. 9/6/17), 224 So.3d 980. However, under the specific facts and charges of this case, and because the armed robbery of Ms. Jefferson provided the sole basis for the attempted first degree murder conviction, we find that there is a double jeopardy violation.
The remedy for a double jeopardy violation is that the less severely punishable conviction and sentence are vacated. State v. Thomas, supra . Accordingly, Hardyway's conviction and sentence for attempted first degree murder, the less severely punishable offense, is vacated.[4]
Habitual Offender
Hardyway argues pro se that the habitual offender bill violates the deal he made with the district attorney. On February 2, 2016, Hardyway appeared with his attorney, James Buckley, at a hearing. Assistant District Attorney Lewis Jones appeared for the State. Mr. Jones indicated that Hardyway had been on probation for a felony conviction in the Third Judicial District Court, Criminal Docket No. 64,447 at the time the offenses were committed at Subway. A petition was filed to revoke his probation and Hardyway denied the allegations that he violated his probation by committing the instant offenses of attempted first degree murder and armed robbery. At the hearing, Mr. Jones made the following statement:
I had indicated to Mr. Hardyway's counsel that if he admitted violating his probation today, we would ask that his probation be revoked; however, if he later pled guilty to the new charge, that I would not charge him as an habitual offender. On the other hand, I've informed him once we start this hearing, whether he is convicted or pleads guilty later, I am going to charge him as an habitual offender and I would ask that he state that he understands that and it would proceed at this time.
The trial court asked Hardyway if he heard and understood the offer and Hardyway answered affirmatively. Hardyway then conferred with Mr. Buckley. Mr. Buckley then informed the trial court that Hardyway had reconsidered and decided that he wanted to admit to violating his probation.
The trial court informed Hardyway that if he admitted the probation violation, the original sentence of eight years at hard labor would be imposed, with credit for time already served. Hardyway confirmed that he understood. The trial court also explained that by admitting the probation violation, Hardyway was waiving his right to a full and formal probation revocation hearing, and Hardyway confirmed that he understood and that he wished to waive his right. Hardyway then pled guilty to violating his probation, and the trial court ordered that the original sentence be imposed.
Mr. Buckley then asked, "And Your honor, if I may clarify with Mr. Jones, for the record, this - you will not seek [a] habitual *514 offender bill against Mr. Hardyway." Mr. Jones replied, "That's right." The court replied, "So noted."
Sometime between October 24, 2016, and November 29, 2016, Hardyway's legal representation changed from Mr. Buckley to a different appointed counsel, Robert Moore. Mr. Moore represented Hardyway through the remainder of the pretrial proceedings, at trial, post-trial motions, sentencing, and the habitual offender proceeding.
On August 15, 2017, Mr. Jones filed the bill of information charging Hardyway as a third-felony habitual offender. Notably, no objection or motion to enforce, based on the February 2, 2016 deal, was raised by Mr. Moore or Hardyway in the motion to quash the habitual offender bill, at the arraignment on the habitual offender bill, at the hearing on the motion to quash the habitual offender bill, or at sentencing under the habitual offender bill.
A plea agreement is a contract between the State and a criminal defendant. State v. Nixon , 52,202 (La. App. 2 Cir. 8/15/18), 254 So.3d 1228. In State v. Young, 50,072 (La. App. 2 Cir. 8/12/15), 174 So.3d 719, this Court explained the principles governing the validity of plea agreements:
In determining the validity of plea agreements, Louisiana courts generally refer to rules of contract law, while recognizing at the same time that a criminal defendant's constitutional right to fairness may be broader than his or her rights under contract law. The party demanding performance of a contract has the burden of proving its existence. In the context of plea bargains, a defendant may demand specific performance of the state's promise if he can show that the parties reached an agreement, that he performed his part of the agreement, and that in doing so, he relinquished a fundamental right.
Contracts have the effect of law for the parties and must be performed in good faith. A party has an implied obligation to make a good faith effort to fulfill the conditions of a contract. When there are reciprocal obligations, the obligor of one may not be put in default unless the obligor of the other has performed or is ready to perform his own obligation. Also, a party to a commutative contract may refuse to perform his obligation if the other has failed to perform. (citations omitted)
A plea is constitutionally infirm when the defendant is induced to plead guilty by a plea agreement or by what the defendant reasonably believes is a plea agreement and the terms of the agreement are not satisfied. State v. Rathore , 52,084 (La. App. 2 Cir. 6/27/18), 251 So.3d 628. When a plea agreement is breached, the defendant has the option of specific performance or to withdraw the guilty plea. State v. Patterson , 51,559 (La. App. 2 Cir. 9/27/17), 244 So.3d 733, 736.
The record shows the State made an agreement, that if Hardyway admitted his probation violation in the prior case, the State would not file a habitual offender charge in this case. By filing the habitual offender bill, the State breached the plea agreement. For this reason, we vacate the habitual offender adjudication and sentence and remand the matter to the trial court for resentencing as to the conviction for armed robbery, in accordance with the agreement.
Excessive Sentence
Hardyway argues the sentences imposed are excessive and serve no legitimate purpose. Because we vacate the attempted first degree murder conviction and vacate the armed robbery sentence under the habitual *515 offender enhancement, we pretermit this discussion.
Right to a Preliminary Exam
In a pro se argument, Hardyway questions whether his counsel could constitutionally waive his right to a preliminary exam when he was not questioned on whether he understood the seriousness of the matter at hand.
The hearing transcript shows that the trial court asked the defendant numerous times whether he wanted to dismiss the preliminary exam that was already in progress. Hardyway confirmed his choice several times and the motion for preliminary exam and motion to suppress were both withdrawn. The motion for preliminary exam was clearly withdrawn at the defendant's request, with his approval. This assignment is without merit.
Phone Calls
Mr. Hardyway's next pro se assignment of error involves the phone calls made while he was incarcerated. He argues a motion for mistrial was made after the trial judge instructed the prosecution not to mention that phone calls made by the defendant were made while he was incarcerated, yet the prosecution asked a witness if he was aware the phone calls were made between the defendant and his co-perpetrator, Jeremy Hardaway. Hardyway asserts that a Sixth Amendment violation occurred, but provides no further argument or explanation.
During his opening statement, the prosecutor mentioned that the defendant made calls to Jeremy Hardyway, in which he said, "Stay away from here, you didn't have anything to do with this, you know nothing, you're not involved." The defense objected that the prosecutor's statements suggested that Hardyway made inculpatory statements. The defense argued that the prosecutor's comments constituted prejudicial and reversible error as a reference to a purported confession during the opening statement. The defense moved for a mistrial.
In opposition, the State argues that the alleged statements were not inculpatory and not a confession and that the statements were not made to law enforcement. The trial court cited La. R.S. 15:449 and found that the statements did not constitute a confession because they were not an acknowledgment of guilt, just an acknowledgment of facts that may tend to establish guilt. The motion for mistrial was denied. The witness, or the prosecutor, did not mention that the defendant was incarcerated. The defendant fails to show that the trial court erred in denying this motion. This assignment lacks merit.
Miranda Warning
In a pro se assignment of error, Hardyway argues that law enforcement officers enlisted his mother to assist them in locating him, thus making her a state agent. He asserts that Ms. Jones failed to properly read him his Miranda rights before communicating with him, in violation of his Fifth and Sixth Amendment rights.
Ms. Jones testified that she contacted law enforcement and made the arrangements because she wanted her son to turn himself in, and when he refused, she wanted him to be brought in safely. Jones was not a law enforcement officer and was not made one simply because she contacted police and arranged this meeting. This assignment is without merit.
Motion to Suppress
In his final pro se assignment of error, Hardyway argues the DNA swab and other evidence should have been deemed inadmissible because the search warrant was not properly filed. During trial, the defense moved that the DNA swab taken from Hardyway by Lt. Hamlin should be held inadmissible. The defense asserted that the search warrant obtained *516 by the police for the DNA swab was rendered invalid because there was no documentation in the record showing that the return for the search warrant was filed into the record. The State objected that the motion was invalid because it was not in writing and because the motion was not timely filed before trial started. The trial court denied the motion, finding that irregularities and technicalities in filing the return did not constitute a constitutional violation, citing State v. Square , 257 La. 743, 244 So.2d 200 (1971), vacated in part on other grounds , 408 U.S. 938, 92 S.Ct. 2871, 33 L.Ed.2d 760 (1972), and State v. Revere , 572 So.2d 117 (La. App. 1 Cir. 1990), writ denied , 581 So.2d 703 (La. 1991).
Although an officer may fail to file a return with the court listing the details of a seizure pursuant to a search warrant, such an irregularity does not require suppression of the evidence. State v. Loyden , 597 So.2d 156, 160 (La. App. 3 Cir. 1992), writ denied , 605 So.2d 1089 (La. 1992). Failure to return and file the search warrant is a ministerial defect and does not affect the validity of the search. United States v. Wilson , 451 F.2d 209 (5th Cir. 1971).
CONCLUSION
For the foregoing reasons, Steven Hardyway's conviction and sentence for attempted first degree murder are vacated. Hardyway's conviction of armed robbery is affirmed. Hardyway's habitual offender adjudication and sentence for the conviction of armed robbery are vacated and the matter remanded to the trial court for resentencing in accordance with the plea agreement made on February 2, 2016.
AFFIRMED IN PART; VACATED IN PART; AND REMANDED IN PART.

In evidence presented later at trial, the second intruder's mask is identified as an alien mask.

During Jeremy's testimony, he stated that "Yedi" was the street name of his friend, who drove him and Steven Hardyway across town. Jeremy stated that Yedi dropped them off at a house about ten minutes from Subway, and from there, they walked to Subway.

Hardyway also argued the double jeopardy violation pro se.

The penalty for attempted first degree murder is imprisonment at hard labor for not less than 10, nor more than 50 years, without the benefit of parole, probation, or suspension of sentence. La. R.S. 14:30 ; La. R.S. 14:27. The penalty for a conviction of armed robbery is imprisonment at hard labor for 10 to 99 years, without the benefit of parole, probation, or suspension of sentence. La. R.S. 14:64.